# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | | |
|---|---|---|
| Don Alexander, | ) | Civil Action No. 1:13-02032-JMC |
| | ) | |
| Appellant, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Barnwell County Hospital, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

This matter is before the court by way of an appeal by Appellant Don Alexander ("Appellant" or "Intervenor") from orders filed by the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court") on April 18, 2013 and May 7, 2013, and a motion to dismiss the appeal by Appellee Barnwell County Hospital (the "Hospital" or "Debtor"). (See ECF Nos. 1, 7.) Specifically, Appellant appeals the Bankruptcy Court's Order Granting Debtor's Motion for an Order Authorizing a Substitute Asset Purchase Agreement in Aid of Implementation of the Plan and Approving the Notice and Application for Settlement and Compromise between Debtor and SC Regional Health System, LLC ("RHS"), (the "April Order") and the Order Denying the Motion to Amend the April Order (the "May Order").[1] (See ECF No. 1 at 3-21.) Appellant asserts that the Bankruptcy Court erred in entering the April Order because he had a pending challenge to the Hospital's Chapter 9[2] eligibility due to members of the Barnwell County Council ("BCC") inserting themselves onto the Hospital's

---

[1] This matter is one (1) of four (4) appeals challenging orders entered by the Bankruptcy Court. The other three appeals are identified as follows: In re: Barnwell Cnty. Hosp., C/A No. 1:12-02265-JMC (D.S.C. Aug. 9, 2012); In re: Barnwell Cnty. Hosp., C/A No. 1:13-01678-JMC (D.S.C. June 19, 2013); and In re: Barnwell Cnty. Hosp., C/A No. 1:13-02164-JMC (D.S.C. Aug. 9, 2013).

[2] Chapter 9 of the Bankruptcy Code, 11 U.S.C. §§ 901-946, governs the adjustment of debts of municipalities. Section 901 sets out which provisions of Title 11 apply to filings of municipalities. See 11 U.S.C. § 901.

1

Board of Trustees in violation of the dual office holding prohibitions of S.C. Const. Art. VI § 3 and Art. VII § 1. (ECF No. 6 at 6.) The Hospital responded to the appeal by moving to dismiss it on the ground of mootness. (ECF No. 7.)

For the reasons set forth below, the court **GRANTS** the Hospital's motion to dismiss and **DISMISSES** the appeal as moot.

## I.    RELEVANT BACKGROUND

To support its findings, the Bankruptcy Court set forth the following detailed findings of fact, which this court will not set aside unless clearly erroneous:

> On October 5, 2011, Debtor filed a petition seeking relief under chapter 9 of the United States Bankruptcy Code ("Bankruptcy Code"). Prior to the filing of its petition, the Debtor had been unable to pay its debts as they became due. For years, Barnwell County provided funding to keep Debtor operating, but Debtor was informed that Barnwell County would no longer provide funding. Furthermore, as a rural hospital, Debtor does not have the customer volume to pay for new technology and facilities that larger hospitals in neighboring areas can provide. Based upon those factors, Debtor, along with Bamberg County and Bamberg County Memorial Hospital ("Bamberg Hospital"), sought a third party purchaser to provide healthcare for the residents of Bamberg County and Barnwell County.
>
> On September 29, 2011, Debtor, along with Bamberg Hospital, Barnwell County, and Bamberg County, executed an Asset Purchase Agreement ("Original APA") with RHS for the purchase of substantially all of the assets of Debtor and the Bamberg Hospital. Debtor's Amended Plan for Adjustment of Debts, as modified by the Debtor's Modification to First Amended Plan for Adjustment of Debts (collectively, the "Plan") was based on the transaction contemplated by the Original APA. On May 23, 2012, the Bankruptcy Court entered its Order confirming the Debtor's Plan (the "Confirmation Order").[3]
>
> The transaction contemplated under the Original APA did not close, the reasons for which were vigorously contested by Debtor and RHS. As a result of the transaction not closing, RHS filed an application seeking payment of an administrative expense claim ("RHS Application") in the amount of approximately $1,819,000.00 for liquidated damages under the Original APA and for compensation and reimbursement of fees and expenses under a separate

---

[3] The Bankruptcy Court also found in the Confirmation Order that the dual office holding prohibition of the South Carolina Constitution had not been violated and that the Hospital met Chapter 9 eligibility requirements.

2

Consulting Agreement between Debtor and RHS. Debtor objected to the RHS Application and disputed that RHS was entitled to a claim against Debtor. Additionally, Debtor asserted that it was entitled to damages against RHS, which RHS disputed.

When the transaction did not close under the Original APA, Debtor sought a new purchaser to be substituted for RHS and close the transaction in accordance with the terms approved in the Plan. Debtor located a new purchaser and executed a new Asset Purchase Agreement with BCH Acquisitions Group, LLC ("BCH Acquisitions Group" or "New Purchaser") dated November 26, 2012 (the "New APA"). Thereafter, on December 7, 2012, Debtor filed the Substitution Motion seeking an Order from this Court authorizing Debtor to substitute the New APA in place of the Original APA and allowing Debtor to sell its assets to BCH Acquisitions Group instead of RHS as contemplated in the Plan. Debtor's Plan cannot be fully consummated and implemented unless the Court authorizes this substitution.

Under the Original APA, RHS was entitled to any payment incentives Debtor had previously received or was entitled to receive at closing under the Health Information Technology for Economic and Clinical Health Act ("HITECH Act"). RHS planned to use the HITECH funds to pay the claims of HHS, First Citizens Bank and Trust Company, Inc. ("First Citizens"), and the South Carolina Office of Rural Health ("SCRH") as provided in the confirmed Plan, and then keep the remainder of the HITECH funds, with none of the remaining funds being used to pay creditors. Under the New APA, Debtor is entitled to retain all HITECH funds for the two fiscal years ending September 30, 2011, and September 30, 2012, which total approximately $2,578,000.4 Since Debtor is retaining these HITECH funds under the New APA, these funds are available to pay operating expenses and claims. Additionally, under the New APA, BCH Acquisitions Group, as part of the purchase price, is paying all the amounts RHS had agreed to pay to Stroudwater Capital, HHS, First Citizens, and SCRH without using the HITECH funds, as well as paying $50,000 in costs Debtor has incurred during bankruptcy.

In addition to seeking an administrative expense priority claim against Debtor in the amount of approximately $1,819,000.00, RHS filed an objection to the Substitution Motion. The Court held a hearing on the Substitution Motion on January 9, 2013. After the hearing on the Substitution Motion, Debtor and RHS mediated their dispute and entered into the Settlement Agreement which resolves all issues between RHS and Debtor, including the RHS Application and the objection of RHS to the Substitution Motion. As part of the settlement, RHS agrees to withdraw with prejudice the RHS Application and its objection to the Substitution Motion upon payment of the settlement funds.

At the April 8, 2013 hearing, Mary Valient, who has been the Chief Executive Officer ("CEO") of Debtor since 2009, testified Debtor currently owes about $2.2 million to vendors. She testified that Debtor has funds to operate for three more months, and at that point, Debtor would need to turn to Barnwell County for

3

additional funds. This projection includes using the HITECH funds as well as money the State of South Carolina seizes from the tax refunds of individuals who owe money to Debtor.

At the April 8, 2013 hearing, a representative of BCH Acquisitions Group testified that BCH Acquisitions Group is ready to move forward with finalizing and closing the transaction described in the New APA. He also testified BCH Acquisitions Group will have a capitalization of $4 to $8 million at the closing of the New APA.

(ECF No. 1 at 4-7.)

On July 24, 2013, Appellant filed a notice to appeal the Order to this court pursuant to 28 U.S.C. § 158(a) or (b). (ECF No. 1.) On July 25, 2013, the Clerk of Court entered a document that notified the parties of the filing of the bankruptcy appeal and set up a briefing schedule for their submissions.[4] (ECF No. 2.) On August 7, 2013, Appellant filed his brief in which he identified the issue on appeal as "[w]hether the Bankruptcy Court erred in granting Debtor's Motion for a Substitute Asset Purchase Agreement and in approving a settlement between Debtor and SC Regional Health System, LLC ("RHS"), where Intervenor had challenged the eligibility of the [D]ebtor due to dual office holding, and that issue was on appeal to the United States District Court." (ECF No. 6 at 6.)

On August 14, 2013, the Hospital filed a motion to dismiss the appeal for mootness. (ECF No. 7.) Appellant filed opposition to the Hospital's motion to dismiss on September 3, 2013, to which the Hospital filed a reply in support of its motion on September 11, 2013. (ECF Nos. 12, 13.)

## II.     LEGAL STANDARD

A.     <u>Bankruptcy Appeals</u>

This court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28

---

[4] The briefing schedule for a bankruptcy appeal to a federal district court is established by law. <u>See</u> Fed. R. Bankr. P. 8009. According to Rule 8009, an appellant has fourteen days after filing a notice of appeal within which to file a supporting brief. <u>Id.</u> at 8009(a)(1).

U.S.C. § 158; see, e.g., In re Kirkland, 600 F.3d 310, 314 (4th Cir. 2010) (noting district court's "capacity as a bankruptcy appellate court"). The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding. See 28 U.S.C. § 158(c)(2). Accordingly, the bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. Fed. R. Bankr. P. 8013. A finding of fact is clearly erroneous when the entire record demonstrates convincingly to the reviewing court that "a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012). A bankruptcy court's conclusions of law are subject to de novo review. In re Biondo, 180 F.3d 126, 130 (4th Cir. 1999); In re K & L Lakeland, Inc., 128 F.3d 203, 206 (4th Cir. 1997).

B.     The Doctrine of Mootness

"Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." Deakins v. Monaghan, 484 U.S. 193, 199 (1988) (citations omitted). "'[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction . . . .'" Townes v. Jarvis, 577 F.3d 543, 546 (4th Cir. 2009) (quoting United States v. Hardy, 545 F.3d 280, 283 (4th Cir. 2008)). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies" under Article III of the Constitution. Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983). "A case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 370 (4th Cir. 2012) (internal quotation marks omitted).

Mootness in bankruptcy appeals arises in two forms: constitutional mootness and equitable mootness. Carr v. King, 321 B.R. 702, 705 (E.D. Va. 2005). Constitutional mootness

5

refers to the well-settled notion that "[w]hen there is no longer a case or controversy in the constitutional sense, an Article III court is without jurisdiction to adjudicate." Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 841 F.2d 92, 95 (4th Cir. 1988). A federal court lacks authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). Therefore, "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Id. (quoting Mills, 159 U.S. at 653).

In contrast, "the doctrine of equitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." Mac Panel Co. v. Va. Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002). Equitable mootness is "[a]pplied principally in bankruptcy proceedings because of the equitable nature of bankruptcy judgments" and "is often invoked when it becomes impractical and imprudent 'to upset the plan of reorganization at this late date.'" Id. at 625 (quoting In re UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir. 1994)). Moreover, in applying equitable mootness, a court "does not employ rigid rules," but must "determine whether judicial relief on appeal can, as a pragmatic matter, be granted." Id. Specific "[f]actors in making this determination include (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties." Id.

6

C.      Motions to Dismiss for Mootness

The appropriate means for challenging the mootness of a case is a motion under Fed. R. Civ. P. 12(b)(1).  See Friends of Animals v. Salazar, 670 F. Supp. 2d 7, 11 (D.D.C. 2009) (holding that "[a] motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1)").  The burden of showing subject matter jurisdiction on a Rule 12(b)(1) motion rests with the party invoking it.  See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

### III.    ANALYSIS

In this appeal, Appellant argues that the Bankruptcy Court erred in issuing the April Order and the May Order.  (See ECF No. 6.)  Before considering the merits of the appeal, the court must address first the issue of whether the appeal is barred by mootness, because mootness is a jurisdictional issue.  See, e.g., Church of Scientology of Cal., 506 U.S. at 12 ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed," for federal courts have "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) ("A federal court has an independent obligation to assess its subject-matter jurisdiction, and it will 'raise a lack of subject-matter jurisdiction on its own motion.'") (quoting Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)).

A.      Motion to Dismiss for Mootness

    1.    *The Parties' Arguments*

The Hospital moves for dismissal of the appeal, arguing that the appeal is both

7

constitutionally moot and equitably moot. (ECF No. 7.) In support of this argument, the Hospital asserts that the Plan has been substantially consummated; Appellant failed to obtain a stay of either the April Order or May Order pending the appeal; the court cannot grant effective relief on appeal even if Appellant's arguments have merit; and even if the court could grant effective relief, implementation of that relief would be inequitable. (Id. at 2.)

To show that the Plan has been substantially consummated, the Hospital submitted evidence via affidavit that on June 12, 2013, in accordance with the Plan: (1) all of the Hospital's assets were transferred to BCH Acquisitions Group, which took control of the hospital facility and hired workers that had been previously employed by the Hospital[5]; (2) BCH Acquisitions Group paid the Hospital closing and cure costs in the amount of $1,400,000.00[6]; (3) a Creditor's Distribution Trust was created, which entity was the recipient of any remaining non-purchased assets of the Hospital for collection and distribution to its unsecured creditors[7]; and (4) the Hospital ceased operations. (ECF No. 7-2 at 5-6.) Based on the foregoing, the Hospital argues that the appeal is constitutionally moot because Appellant seeks to accomplish the impractical and impossible by unwinding the Hospital's bankruptcy. (ECF No. 7-1 at 9-10.)

The Hospital also argues that the appeal is equitably moot because it would be "both

---

[5] In addition, BCH received the following from the Hospital: (1) all schedules and due diligence items incident to the New APA; (2) a deed of the real property comprising the Hospital's facility; (3) the right, title and obligations of certain of the Hospital's operating contracts; (4) Bills of Sale for the Hospital's personal property; (5) transfers and powers of attorneys for certain licenses for the operation of the hospital, its rural facilities and its pharmacies; (6) proof of settlements of certain indebtedness; and (7) certificates of Barnwell County and the Hospital regarding the completion of certain conditions precedent to the sale. (ECF No. 7-2 at 5 ¶ 23.)

[6] Upon receipt of the $1,400,000.00, the Plan required the Hospital to disburse $701,382.24 to the United States for Medicare overpayments, $47,500.00 to First Citizens Bank and Trust Company, Inc., and $17,000.00 to South Carolina Rural Health. (ECF No. 7-2 at 6 ¶ 26.) In total, the Hospital has paid allowed administrative expenses in the amount of $900,000.00, in addition to final operating costs through June 12, 2013. (Id. at ¶ 27.)

[7] The Plan required that the Hospital's right to recover preferential and fraudulent transfers be transferred and vested in a Creditors Distribution Trust. (ECF No. 7-2 at 5 ¶ 21.)

impractical and imprudent to upset the Hospital's bankruptcy" and "[t]he four factors considered . . . in determining whether to dismiss an appeal as equitably moot weigh heavily in favor of dismissal in this case." (Id. at 11-16.) In support of this argument, the Hospital asserts that (1) Appellant failed to obtain a stay of either the April Order or the May Order on appeal; (2) the Plan has been substantially consummated; (3) the relief requested by Appellant would substantially affect the success of the Plan; and (4) the Hospital's creditors, BCH Acquisitions Group, and other third parties would be significantly harmed if the court granted the relief requested in the appeal. (Id.) Accordingly, the Hospital contends that the appeal should be dismissed for mootness.

Appellant opposes the motion to dismiss, asserting that the appeal is not constitutionally moot because the court has the power to unwind the Hospital's sale no matter the complexity or difficulty. (ECF No. 12 at 2 (citing In re Lomagno, 320 B.R. 473, 480 (1st Cir. BAP 2005) (Bankruptcy court had equitable power to find a foreclosure sale, which occurred in violation of automatic stay, void and without effect); In re Wright, 329 Fed. Appx. 137 (9th Cir. 2009) ("unscrambling the eggs" is theoretically possible through disgorgement of unsecured creditors)).) Appellant further asserts that dismissal of the appeal for equitable mootness is unwarranted because (1) Appellant sought a stay as soon as he had grounds to support a stay; (2) the Hospital substantially consummated the Plan by transferring assets and paying creditors after it had been warned about the consequences of proceeding with the assets sale and/or transfer of assets while an appeal was pending; (3) the Hospital should not have attempted to complete the Plan since it was not an eligible Chapter 9 debtor; and (4) a reversal of the Plan would have a limited effect on third parties since the purchaser of the Hospital had notice of Appellant's objection to the sale, and the Hospital's other assets have not been distributed to unsecured

creditors. (Id. at 3-6 (citing ECF Nos. 12-1, 12-2, 12-3, 12-4).) Therefore, Appellant requests that the court deny the motion to dismiss and consider the appeal on the merits.

    2.    *The Court's Review*

Upon review, the court finds that this appeal is both constitutionally moot and equitably moot. This appeal is constitutionally moot because Appellant seeks a remedy that would require undoing the Plan in its entirety. In this regard, the Plan has been implemented such that a greater part of the Hospital's assets are in the possession of a non-party to this action and any remaining assets have either already been distributed or are about to be distributed to other non-parties. Moreover, most of the proceeds from the transfer of the Hospital's assets have been distributed to its creditors, who are also non-parties to this action. Based on the foregoing, the court finds that it would be impossible to award Appellant effective relief under these circumstances. Therefore, the court finds that the appeal should be dismissed as constitutionally moot.

Alternatively, upon consideration of the four (4) factors used to determine whether judicial relief on appeal can be granted, the court finds that the appeal is equitably moot as well. First, even though Appellant sought and was denied a stay in the Bankruptcy Court, he failed to seek a stay from this court pending the appeal.[8] While a party is not required to seek a stay pending appeal, a party who fails to do so incurs the risk that during the pendency of the appeal, the appeal may be rendered moot. In re Shawnee Hills, Inc., 125 Fed. Appx. 466, 470 (4th Cir. 2005) (citing Taylor v. Austrian, 154 F.2d 107, 108 (4th Cir. 1946)); In re Kevin Blake Carr, 321 B.R. 702, (E.D. Va. 2005). In this case, because this court was not asked to issue a stay pending the appeal, the Hospital was authorized to carry out the Plan before this appeal could be heard.

---

[8] Bankruptcy Rule 8005 expressly provides that even in the face of a denial of a stay by the bankruptcy court, "[a] motion for such relief, . . . may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge." Fed. R. Bankr. 8005.

As to the second factor, the consummation of the Plan has been more than substantial. Substantial consummation as defined by the Bankruptcy Code requires three events: (1) transfer of all or substantially all of the property proposed by the plan to be transferred; (2) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (3) commencement of distribution under the plan. 11 U.S.C. § 1101(2); see Mac Panel, 283 F.3d at 625-26. Based on the facts made known to the court, all three of these events have occurred. Moreover, Appellant does not dispute that the Plan was substantially consummated. Instead, Appellant takes the position that the Plan's consummation occurred after the Hospital had been warned about the consequences of proceeding with an assets sale and/or transfer of assets while an appeal was pending. Notwithstanding Appellant's arguments, it is clear that the Plan has been substantially consummated.

The third factor weighs against Appellant because he seeks to undo the Plan completely, as opposed to a less extreme measure, such as undoing one component of the Plan. Finally, with respect to the fourth factor, the court finds that the remedy Appellant seeks would unduly harm innocent third parties, who are not before the court, including BCH Acquisitions Group and any of the Hospital's creditors to whom money was distributed. Therefore, using the four-factor test set forth by the Fourth Circuit for evaluating equitable mootness, the court finds that this appeal should be dismissed as equitably moot.

B.     The Appeal of the Bankruptcy Court's Order

Because the appeal is moot, the court need not consider the merits of the appeal. Mills v. Green, 159 U.S. 651, 653 (1895) ("It necessarily follows that when, pending an appeal from the judgment of a lower court, . . . , an event occurs which renders it impossible for this court, . . . ,

to grant him any effectual relief whatsoever, the court will not proceed to a formal judgment, but will dismiss the appeal.")

## IV.    CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** the Hospital's motion to dismiss and **DISMISSES** as moot Appellant's appeal of (1) the Bankruptcy Court's Order Granting Debtor's Motion for an Order Authorizing a Substitute Asset Purchase Agreement in Aid of Implementation of the Plan and Approving the Notice and Application for Settlement and Compromise between Debtor and SC Regional Health System, LLC, and (2) the Bankruptcy Court's Order Denying the Motion to Amend the Order Granting Debtor's Motion for an Order Authorizing a Substitute Asset Purchase Agreement in Aid of Implementation of the Plan and Approving the Notice and Application for Settlement and Compromise between Debtor and SC Regional Health System, LLC.  (ECF Nos. 1, 7.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

February 18, 2014
Greenville, South Carolina